## WILLIAM SPEAR vs. EPHRAIM STURDIVANT.

Where an officer's deed of an equity of redemption was seasonably made, delivered and recorded, particularly reciting the performance of every act which the law requires to make the sale legal, and where afterwards, the officer, by permission of the Court of Common Pleas, in which Court the record was, amended his return on the execution, by striking out the names of certain towns, distant from the land described in the deed, and inserting in the place thereof the name of the town wherein the land was, and of two adjoining towns, thus making the return consistent with the deed; *it was held*, that the title thus acquired should prevail against a deed from the same debtor, made after the attachment of the equity, and before the sale thereof.

EXCEPTIONS from the Court of Common Pleas, *Whitman C. J.* presiding.

The action was *trespass* for breaking and entering the close of the plaintiff, being lot No. 65, in the town of *Cumberland.* The plaintiff claimed title to the land under a deed from *David Spear,* dated and executed *Sept.* 20, 1828, and recorded the 22d of the same month.

The defendant, to prove the issue on his part, read to the jury the copy of a writ in favor of *Royal Lincoln,* against *David Spear,* dated *July* 18, 1828, and returnable to the Court of Common Pleas, *October Term,* 1828, with the officer's return thereon, dated *July* 18, *A. D.* 1828, by which it appeared that he had attached the same land as the property of the said *David Spear.* Said writ was duly returned and entered at the Court of Common Pleas, *October Term,* 1828, and at *March Term,* 1829, *Lincoln* recovered judgment against *David Spear* for $648,37, damages, and $10,96, costs of suit, and execution issued on said judgment, *March* 23, 1829. The execution was directed to the sheriff or either of his deputies, or to either of the coroners in said county, the office of sheriff being vacant. The defendant then offered an office copy of the coroner's return on said execution, to prove the levy upon and sale of the equity of redemption of the same lot No. 65, it being under mortgage at the time of the attachment; but the plaintiff's counsel objected to the admission of this evidence, it appearing, as they contended, by the return, that the officer having the execution did not notify the debtor in writing of the time and

place of the sale of the equity of redemption, but that it was done by *Zachariah B. Stevens*, another coroner, who had not the execution. The following is the extract from said return, which is material, viz. " first having given notice to the judgment debtor in writing, of the time and place of said sale by *Zachariah B. Stevens*, coroner, leaving a true copy of the advertisement, which was inserted in the *Eastern Argus*, at his dwellinghouse." The plaintiff's counsel then suggested, that there had been an alteration of the officer's return, and called into Court the said coroner who was sworn, and from whose testimony it appeared, that said return had been amended by leave of Court. Whereupon the plaintiff caused' to be produced from the files of the Court the original petition of said coroner for leave to amend the said return. The petition was entered at the *March Term* of the Court of Common Pleas, 1835, the prayer of which said petition was granted, without notice to the plaintiff. And he also caused to be produced the original return of said levy, and it appeared how it was originally made, but since erased. The original return stated that notifications of the time and place of sale were posted up in two public places in the town of *Portland*, and in the towns of *Cape Elizabeth* and *Westbrook*; neither of which is the town in which the land lies; nor are either of said towns adjoining that in which said land lies; and that *Wescott*, the coroner, by leave of Court, but without any knowledge or consent of the plaintiff, and about six years after the return was made, and after the plaintiff had taken his deed from *David Spear*, altered and amended said return on said execution in the clerk's office by erasing the names of the towns of *Portland* and *Cape Elizabeth* and *Westbrook*, and by inserting the names of the towns of *Cumberland* and *Falmouth* and *North Yarmouth*, which he testified was according to the truth; so that it now appears by said return that the said notices were posted in two places in the town of *Cumberland*, and in the adjoining towns of *North Yarmouth* and *Falmouth*, which evidence was admitted.

The defendant also offered in evidence the deed from the officer to him made and dated *May* 20, 1829, and recorded on the 29th of said *May*, corresponding with the amended return; which was objected to, but admitted, and the jury were instructed that they must return their verdict for the defendant. And they afterwards

returned their verdict for the defendant accordingly. To which ruling and direction the plaintiff's counsel excepted.

*Deblois* and *S. Longfellow, jr.*, for the plaintiff, contended, that the plaintiff's title by deed could be defeated only by a sale in which all the requirements of the statute were complied with. And the record must show, that every thing was done essential to the perfection of the title. The duty of the officer is pointed out in *Rev. Stat. c.* 60, § 17. There must be a full and strict compliance. *Mitchell* v. *Kirkland*, 7 *Conn. R.* 229; *Booth* v. *Booth, ibid.* 350; *Means* v. *Osgood*, 7 *Greenl.* 146; *Grosvenor* v. *Little, ibid.* 376.

The notice could be given only by the officer having the execution, and therefore the statement in the return, that another officer left it, is but in substance saying, that no legal notice was given. *Grosvenor* v. *Little*, and *Means* v. *Osgood*, before cited.

The supposed amendment does not aid the defendant, for no amendments can be made, when they affect the interest of third persons. The return, as originally made, shows that the notices were posted in the wrong towns. The Court had no right to permit the amendment. *Williams* v. *Brackett*, 8 *Mass. R.* 240; *Freeman* v. *Paul*, 3 *Greenl.* 260; *Means* v. *Osgood*, 7 *Greenl.* 146; *Howard* v. *Turner*, 6 *Greenl.* 106; *Porter* v. *Haskell*, 2 *Fairf.* 177. No notice was given to the other party, and he cannot be bound by it.

*Daveis*, for the defendant, said, that every thing necessary to the title of the defendant must appear on record, but that in this case it did so appear. The amendment was properly permitted by the Court of Common Pleas, where the record was; and even if it was not a proper exercise of the power of the Court, yet it was the exercise of a discretionary act, and is not subject to revision. *Clark* v. *Foxcroft*, 6 *Greenl.* 302; *Ingersol* v. *Sawyer*, 2 *Pick.* 276; *Purple* v. *Clark*, 5 *Pick.* 206; *Reynard* v. *Brecknell*, 4 *Pick.* 302; *Welsh* v. *Joy*, 13 *Pick.* 477. The materials were most abundant from which to make the amendment without resorting to parol evidence. The deed stated particularly every thing required by the statute, and the return states, that the notices were posted in the town where the land lies and in two adjoining towns,

and the land is described in the return, as lying in *Cumberland.* But the deed alone is sufficient, as it recites every fact necessary for a complete return, and may be considered as such. The notice is given by record of the deed, and it is not even necessary, that the execution should be returned into the clerk's office. *Emerson* v. *Towle,* 5 *Greenl.* 197 ; *Welsh* v. *Joy,* 13 *Pick.* 477. The deed gives a good title ; but if it did not, and if the amendment permitted by the Court of Common Pleas be subject to revision, the amendment was properly allowed and made. *Welles* v. *Battelle,* 11 *Mass. R.* 481 ; *Adams* v. *Robinson,* 1 *Pick.* 461 ; *Thacher* v. *Miller,* 11 *Mass. R.* 413 ; *Shove* v. *Dow,* 13 *Mass. R.* 529 ; *Avery* v. *Butters,* 9 *Greenl.* 16 ; *Sawyer* v. *Baker,* 3 *Greenl.* 29 ; *Commonwealth* v. *Parker,* 2 *Pick.* 550. Nor can either the lapse of time, or the fact, that *Spear,* the debtor, had conveyed to the plaintiff, make any difference, as to the right to amend with the permission of the Court. *Buck* v. *Hardy,* 6 *Greenl.* 162 ; *Howard* v. *Turner, ib.* 106 ; *Welsh* v. *Joy,* 13 *Pick.* 477 ; *Hall* v. *Williams,* 1 *Fairf.* 278 ; *Haven* v. *Snow,* 14 *Pick.* 28. Some of the same cases show, that no notice to the other party is necessary, and indeed, it could not be ascertained in many cases, who the opposing claimants were.

After a continuance, for advisement, the opinion of the Court was drawn up by

EMERY J. — In this action both parties claim title under *David Spear.* One of the great objects of the administration of justice in civil cases is, to give the fruits of judgments by supporting the executions which issue upon them. Clerical errors in preliminary proceedings may be corrected ; and according to the principles of the common law, the returns of officers may be amended on final process, with certain limitations and exceptions, so as to conform to the truth of the case. This indulgence to human error is not intended to throw out temptations to officers at great intervals of time, to vary on the mere strength of memory only, their returns, so as to affect the vested rights of others. The amendments which officers may be permitted to make, must necessarily depend on the sound discretion of the court to which the application may be made. In the present case, no exception is raised against the regularity of

the return of the attachment of the premises on the original writ of *Lincoln* v. *David Spear*, on the 18th of *July*, 1828; nor against the judgment or execution issued in that suit.

The plaintiff's deed from *David Spear*, was executed the 20th day of *September*, 1828, and recorded the 22d day of the same month. Whether the plaintiff knew of the attachment, when he took his deed, is not in evidence. The writ was duly returned to, and entered at the *October* term of the court to which it was returnable, and at the *March Term*, 1829, judgment was recovered, on which the execution issued. The return thereon is the subject of the present controversy. An amendment of the return having been made under the authority of the Court of Common Pleas, where the precept was returnable, it is argued that the amendment ought not to have been made; that even when made, it cannot affect the rights of the plaintiff; and that there is manifest departure from the requisition of law, as to the notice said to have been given to the debtor.

In *North Carolina*, it is held, that the sheriff may be permitted to make a return to an execution or amend it according to the truth of the case, at any time after the return day, even where important consequences to the rights of the parties may be produced by such amendment. 3 *Murphy's N. C. R.* 128, *Smith* v. *Daniel et al.* In *Rucker* v. *Harrison*, 6 *Munf. Virg. Rep.* 181, a sheriff was permitted by the Court to amend his return after a lapse of seven years from its date; and in fact to change a return where an execution was levied and a forthcoming bond taken, that "the within bond was forfeited on the 4th of *July*, 1803," to this, "to the within judgment a supersedeas issued from the District Court of *Charlotteville*, dated *July* 1, 1803, which writ of supersedeas the sheriff *thinks* was delivered to him on the day of sale. The property within named was not delivered at the day and place of sale. *James C. Moorman, D. S.* for *William Scott*, sheriff, *Campbell County.*"

In *Massachusetts*, in *Wellington* v. *Gale*, 13 *Mass. R.* 483, where the return of the officer was general, that he proceeded to sell after giving public notice of the time and place of sale, agreeably to law in such cases made and provided, it was held defective. The late Chief Justice *Parker*, says, " whether it could be amended

by the officer under the direction of the Court, were the officer now living and ready to certify the essential facts omitted in the return, we are not prepared to say." But the Court were satisfied, that no parol evidence could be properly admitted in lieu of the return of the officer.

After this, in the same Court, came the case of *Ingersol* v. *Sawyer*, 2 *Pick.* 276. The deputy set out all the facts of a sale of an equity of redemption in the deed, which he executed to the purchaser and which was recorded, but the deputy died before the return day of the execution, not having made any return thereon ; but the return, conformable to the recital in the deed, was after the deputy's death made by the sheriff. The Court sustained the proceeding, declaring that parol evidence was not wanted for any purpose relating to the sale. The sale was on the 31st *March*, 1819, the deputy died on the 29th *May*, 1819, and the bill in equity in that case was filed the 22d of *April*, 1822. At what time the sheriff made his return does not appear in the report, nor whether any notice was given on the subject. The opinion was delivered in *March*, 1824.

In an old case, *Dean* v. *Coward*, in *Comyn's R.* 386, a motion was made to amend a common recovery. By indentures of 8 and 9 *June*, 1696, lands in several villas, naming them, were conveyed to make a tenant to the precipe for a common recovery, that is, the deed to lead the uses. At Trinity term, 8 *Wm.* 3, a recovery was suffered, but the vills *Wargrave* and *Wallingford*, two of the vills named in that deed, were omitted in all the proceedings of the recovery. In *June*, 1723, an heir claimed the lands in *Wargrave* and *Wallingford*, by virtue of the entail in the settlement, and in 1726, nearly thirty years after the recovery was suffered, this motion was made, that the recovery should be amended by the deed of *June*, 1696. After a rule to shew cause, the rule was made absolute. And many precedents were cited. This, therefore, must have involved an amendment not only of the record of the recovery, but also what was equivalent to an amendment of the return of the sheriff, that he had caused the plaintiff to have full seisin of the tenements demanded with the appurtenances.

As suggested, in *Emerson* v. *Upton*, 9 *Pick.* 167, we do not interfere with the right of the Court of Common Pleas, to allow the

officer to alter his return; but the whole matter appearing to us, the deed, the return, and the subsequent amendment, we must decide on the legal effect of the whole upon the plaintiff's title.

It is observable, that the defendant was a stranger to the judgment and execution in favor of *Lincoln* v. *David Spear*, till he became a purchaser. The general rule of the common law is, that a purchaser at a sheriff's sale is only bound to inquire, whether the sheriff has authority to sell, and is not bound to look into the regularity of the proceedings.

And it has been held, that if the sheriff sell a term of years on a *fieri facias* to a stranger, and the judgment is afterward reversed, the defendant will be restored to the money for which the term sold, not to the term itself; because the purchaser, a stranger, comes duly thereto by act of law. *Cro. Eliz.* 278 ; *Cro. Jac.* 246. Not so the sale and delivery of a lease to the party himself upon an *elegit*; that is, no sale by force of the writ delivered in extent, which being reversed, the party shall be restored to the term itself. 2 *Serg. & Rawle*, 426, *Vastine* v. *Fury, opinion of Yeates J.*

The course of our decisions has been to require a return by the officer of his proceedings in order to sustain the sale. The return here was made, under the direction of the Court, conformable to the deed, by which the amendment could with perfect propriety and justice be made; and we think, that notwithstanding the reasoning in *Means* v. *Osgood,* the legal effect of this proceeding is to sustain the title of the defendant. Here was *something to amend by ;* the notice of the registry of deeds was communicating the truth to all concerned. All the right of the plaintiff was subsequent to the attachment on the writ, and he took his deed necessarily subject to that incumbrance, which has been followed up seasonably by the sale of the equity of redemption, and the deed thereof put on record on the 29th of *May,* 1829.

It is, however, objected, that the notice in writing to the debtor of the time and place of sale, was made by *Zachariah B. Stevens,* coroner. We cannot consider that the sale is void for that cause, because the officer who had the execution, certifies that he had first given notice in writing of the time and place of sale, to the judgment debtor in the execution, by causing an advertisement thereof to be left at his dwellinghouse, by *Zachariah B. Stevens,* coroner for

said county. Thus much is stated in the deed, and it is more particularly stated in the return.

The instant that the deed from the coroner, *Wescott*, was executed and delivered to the defendant, reciting the compliance with the requisitions of the statute for the sale of rights in equity, the defendant's title was perfect, subject to the debtor's right of redemption. It had relation back to the attachment. The money was paid. The judgment and execution so far satisfied. The 18th section of the *statute, ch.* 60, says, that " all deeds made and executed as aforesaid, shall be as effectual to all intents and purposes to convey the debtor's right in equity aforesaid to the purchaser, his heirs and assigns, as if the same had been made and executed by such debtor or debtors."

Suppose the coroner had died immediately afterward, not having completed his return, can it be, that under such circumstances, ·a stranger coming to the possession of his deed duly by act of law, and having paid his money to discharge so far the demand against the debtor, should lose his title? Would it not be more appropriate, in such a case, that the deed should be considered as a return to the execution? It is not prescribed, that a deed should set forth the circumstances preceding the sale, but if it professed to be in general terms a sale by virtue of the execution, and a correct return of the officer's doings were made upon the execution, it is apprehended that the deed would be supported by the return.

If no collusion or oppression be practised, no one can doubt, that it is of the utmost importance to give countenance to official public sales, and not to suffer immaterial considerations to defeat them. It is best calculated to make the property produce more by exciting competition, and will tend to " prevent odious speculations upon the distress of the debtor."

By this we do not by any means intend to impugn the decision in *Means* v. *Osgood*, further than it has been affected by subsequent decisions. In that case, the defect was palpably fatal, as the Court were then impressed. There was nothing but mere memory, by which the amendment was to be made. But a different conclusion has since been adopted as to what is implied notice to a debtor named in an execution. And a return that he neglected to choose an appraiser, is now deemed as implying that he had notice to

choose one. *Sturdivant* v. *Sweetser*, 3 *Fairf.* 520; *Bugnon* v. *Howes*, 13 *Maine Rep.* 154. We mean not to intimate an intention to overrule decisions against amendments proposed to be made by officers after great intervals of time, merely on the supposed strength of the officer's recollection.

*Exceptions overruled.*